We will hear counsel in Newman v. Beard. May it please the court, my name is Jerome Kalina with the law firm Jones Day and I've been appointed to represent Clifford Newman in this appeal. This case involves several issues, all of which revolve around Excuse me, you're coming into this as on a pro bono basis, aren't you? That is correct, Judge. We thank your firm and you for undertaking this. We really couldn't proceed without lawyers who are willing to do that. Well, thank you, Your Honor. Give that note back to your colleagues, your partners, the people who let you come and take it. This appeal involves several issues, all of which involve what level of pleading is sufficient to overcome a Rule 12b6 motion to dismiss where an inmate in the Pennsylvania Department, incarcerated by the Pennsylvania Department of Corrections, asserts in his complaint that he has been required to affirmatively state that he is guilty of the crime of his conviction in order to be considered for parole. There are three main issues, as you know from the briefs, ex post facto, due process, and First Amendment. I'd like to start with ex post facto. Mr. Newman has alleged in his complaint that the defendants retroactively applied Pennsylvania Statute Section 9718.1, which was passed in 2000, 12 years after his sentencing, which requires certain inmates who have been convicted of sexual offenses to complete a sex offense program or SOP program to be eligible for parole. But didn't the lower court find that Section 9718 did not apply to Mr. Newman? Because as I read that statute, you'd be entirely ineligible for parole. He would be categorically prohibited or barred from entitlement to parole. But that's not what happened here. They've made a – they've given him an opportunity, and they've said no. Well, what Mr. Newman alleged in his complaint was that essentially the parole hearing was a sham, that he was never truly considered for parole, and that he was in fact told by a hearing examiner that unless you complete this SOP program, you cannot get parole. And that in that view that – What facts in the complaint – what well-pleaded facts in the complaint support that notion? Mr. Newman averred in the complaint that he was told this by the hearing examiner, that the hearing examiner – He was told that it was a sham? No, that he was told by the hearing examiner that unless he completes the SOP program, he cannot get parole, that they do not get parole without completion of the SOP program. He alleged that he was told this by the hearing examiner. And as a pro se complainant, viewing the facts in his favor, that alleges sufficiently application 9718.1. The U.S. Supreme Court has stated that laws governing parole prisoners can violate the ex post facto clause, and this court in fact has held that in the Mickens-Thomas series of cases. In fact, with regard to 9718.1 in the second Mickens-Thomas case. But isn't there something in this – Well, first of all, if we're talking about the U.S. Supreme Court, hasn't it held that admission of one's crime is an essential element of rehabilitation? And so that even if we were to agree with you, doesn't Pennsylvania – no, this is Pennsylvania. Doesn't Pennsylvania have the right to say to its inmates, especially in the sex – Well, in McEwen v. – McEwen case, yeah. I'm finding that the Supreme Court decision, where the court said acceptance of responsibility is the beginning of rehabilitation. And while there may be experts who go both ways on that, if Pennsylvania decides that acceptance of one's crime, especially when case after case in this case has held that he was guilty – he might still say I'm not, but the fact remains he has been found guilty – doesn't he have to accept that crime? Well, Your Honor – Let me put it in a better way. Isn't the state and the parole board entitled to say that if you don't accept your crime and move on from there, then we won't give you parole? Well, the state is certainly entitled, under the law that should have applied to Mr. Newman, to consider it as one of the factors. What Mr. Newman has alleged is that he was not even fairly considered for parole because the state simply said no SOP, no parole at all. But he didn't go for the – he didn't even apply for the program, did he? Would he have been accepted in the program if he continued to deny that he committed the sexual offense? Well, based on the allegations in the complaint, Your Honor, he alleged that there was – there used to be a non-admitters program, and that was at some point canceled. I'm sorry, I didn't hear the word. A non-admitters program where you could – there was an SOP program that you can complete for inmates who were not – would not admit that they in fact had committed the crime for which they were convicted. He says that that is no longer – that has been removed and isn't available to him, and he's alleged that he is unable to participate in the SOP. I can only speak to what is obviously on the record and in his complaint. Is this – I'm sorry, go ahead. I'm just still puzzled by your argument for ex post facto application under 9718 because it's my understanding that under that statute you're not eligible to apply. There's some sort of categorical bar. Isn't that right? That's how the statute – the statute does say you're not eligible. You're not eligible. I mean, he was allowed to apply. He was considered. He was denied. I mean – Well, Mr. Newman's argument is that – what he's alleging in the complaint is that he in fact really wasn't considered, that he wasn't fairly considered because what the board did, it went through the motions, but it said, and they told him at the hearing, we're not even going to consider you for parole unless you complete this SOP program, which required his admission of guilt. Well, but the statement that he needs to complete the SOP program is not tantamount to saying you're ineligible under Section 9718, and under my understanding, the crime of which he was convicted is not even one of the enumerated offenses to which 9718 applies, is it? I actually have to plead slight ignorance. I'm not entirely sure whether it would or wouldn't have been. I didn't analyze that coming in. That said, and Mr. Newman, we would argue probably that it isn't. But I would say that taking his complaint in the light most favorable to him and as a pro se complainant, that he's alleged that what the parole board did was essentially go through the motions. Well, we certainly construe his complaint in the most liberal sense because he's pro se. I don't disagree with you on that, but I guess what I'm asking is, isn't there a qualitative difference between saying that someone is ineligible and can't apply and saying that someone's always going to lose? I mean, if Charles Manson shows up on his 15th parole hearing and says, yep, I did it and I'm glad I did it, he's probably going to lose, right? That could be deemed a sham in his view, right? He's going to lose. And if the state system has set up a rule that requires acceptance of responsibility consistent with his conviction as found by a jury or in a guilty plea situation, the person's always going to lose, whether it's your client or anyone else. That doesn't make the process a sham. It just means that they're going to lose, right? Well, I guess my reply to that, Judge, is that what he's alleged is that the parole board is supposed to consider a number of figures, the nature of the crime, and the list of various factors. And what the parole board here did, according to his allegations, is that they didn't consider any of those. They simply said they didn't consider anything and simply said, you must complete this SOP program under a statute that shouldn't have applied to him. And if you don't, you cannot get parole. Is there anything – I was going to ask the state, but I'll ask you too. Is there anything in the record that suggests that before the parole rules were changed, the parole board would have considered whether he, the putative parolee, admitted the crime? In the record, I think the prior parole regulations would have said that the parole board could have considered that as one of the factors, whether he took responsibility. That said – oh, I'm sorry. No, no, go ahead. That said, Mr. Newman alleges that there was a non-admitter's program that would have let him go forward with the SOP, and that could have been a factor that they considered, whether he took responsibility for what he was convicted of. But what he's alleging is that the parole board only focused on this SOP requirement. Well, and there's a basis for that. If you look at the five factors, they all come back to the same – the five factors that they listed, they all come back to that. But I'm interested in – you focused on the ex post facto aspect, and if, in fact, there was some evidence or somebody testified that we wouldn't give parole to someone who didn't admit to the sexual offense, is there really an ex post facto claim at issue? Well, I think we're jumping ahead to evidence that isn't in the record. Well, that's what I wanted to know. Somehow I had the feeling that there was somebody who may have so testified, and I don't know. That's up to the state to tell us. There was – this was dismissed on a Rule 12b-6, so there was no – there may have been – I have to go back to look at the briefs to see if there was any affidavits attached to their briefs, and I'm sure State could answer that. But there certainly wasn't any discovery yet in this case. Do you have anything more to tell us? We'll get you – yeah. If you don't, we can get you – give you extra time on rebuttal. Well – Go ahead. We want to hear you. And that was – You came all the way from Pittsburgh, right? I did come from Pittsburgh. Yeah. I did want to touch on – we just discussed ex post facto. Just touch on the other issues. Sure. The substantive due process claim. Oh, yeah. I'll do that. Is it unreasonable for a parole board not to give – that he did the crime? Well, Your Honor, I think – Talking due process, yeah. Well, I think this comes back to the Block v. Potter case, Your Honor, where the court held that the board would violate due process if it bases a decision on a constitutionally impermissible criteria, such as race, religion, or the exercise of free speech rights. That case involved an allegation that the parole board made a decision based on racial factors. And that a liberty interest isn't required to find, on substantive due process grounds, that there's been – that the hearing, that the decision-making is arbitrary and capricious. And Mr. Newman's – Is that enough for substantive due process?  He does, but I would argue that the combination of factors here, namely that he has been required, after asserting his innocence for however many years, that he has to turn around. And if he wants to get parole, he needs to assert his innocence to complete this program, which he previously wasn't required to take previously as a prerequisite to get parole. Because that's, again, going back to the ex post facto, which it figures in as well. He also has alleged that there are various unsworn statements that were used that he wasn't given a chance to see or rebut. Now, he wasn't looking for cross-examination or a proper hearing like that, but a chance to see and rebut those statements. Your Honor. Mr. Kleiner, as I understand the ex post facto argument, it rests on two propositions. One is that there was an ex post facto problem raised by the retroactivity of the statute requiring completion of the sexual offense program. And secondly, independently, an ex post facto problem raised by the requirement of an admission of guilt. I have some trouble figuring out where there's an ex post facto problem that arises from the, quote, retroactive application of the statute. The statute simply prescribes, as I understand it, that you go through a program to be eligible, if you will, to apply for parole or to receive it. That then becomes a matter of the plaintiff's choice, whether he's going to comply with that requirement or not. Where's the ex post facto? It's a choice that he makes, has a present capacity to comply with in one way or another. Well, it's a... I'm not, I guess I'm not, I may not understand your question, but let me try to answer it. Well, let me put it this way. I can understand the ex post facto argument with respect to the requirement of admission of guilt, where up to then he's been proclaiming innocence. I can understand that because admission of guilt has potentially a lot of collateral consequences, especially if it's somebody who's insisting that he's innocent. But that seems to me of a different order from a different constitutional order, from simply the requirement that he engage in a program, which requirement didn't exist before. Is there some punishment there? Oh, well, what we allege in the briefs, Your Honor, is that he's going to face another 20 years in prison because of this. And... No, because he was convicted. Well, you're... Because that's why he's going to face 20 years. Well, he is, but... But he'll answer that following. But for the requirement that he participate in this SOP program, there is a reasonable possibility that he would have actually, well, first of all, he would have been actually considered for parole. And the, I think it's, to call it simply a choice, and I know that there is in the self-incrimination context that there are cases that say it's simply a choice. But I think here when we're talking about the First Amendment and we're talking about making him assert basically the truth of his conviction, ratify what the jurors did, I think, as you pointed out, it does raise various collateral issues, but also that there are some irreducible constitutional requirements where the choice that you're requiring is improper, where you're putting an unconstitutional condition on the choice, where, yes, you have a choice, but you have to waive your free speech rights to do that. I see my time's up, but I'll take it up on rebuttal. If there are no more questions. Thank you very much. Let's hear from the State and we'll be back to you. Good morning. May it please the Court. Yeah, you have to get on the tape. Thank you. Just say, may it please the Court. May it please the Court. Kamal Alexander Marichli for the appellees in this action. This, I think, is a philosophically challenging case because of the nature of the interests that have been raised. But I think from a legal standpoint, it is a far simpler case, and that is regardless of the fact that Mr. Newman was acting pro se when he drafted his complaints, he failed particularly under the standards of Twombly versus Verizon and Ashcroft versus Iqbal to- Which came about after he drafted the complaint. Quite so, Your Honor. But nevertheless, it had been interpreted to require that he draft a complaint in such a manner as to plausibly allege claims, to put sufficient facts or inferences within the complaint that would satisfy, in his case, a prima facie cause of action for ex post facto violation or a First Amendment violation. What's missing? You say something's missing that should be there. What's missing from the complaint? Essentially, what's missing from the complaint is any active allegation that would pertain to the two prongs that are necessary to state an ex post facto violation after Mickens-Thomas has been glossed by this court in Richardson versus the Pennsylvania Board of Probation and Parole. Could you be more specific? Yes. Precisely what's missing? Precisely what's missing is he claims that the statute was, Section 9718.1, was applied to him retroactively when, on the face of the statute itself, which we are allowed to consider under a motion to dismiss under 12b-6, on the face of the statute itself, as some questions from the bench have demonstrated, it's quite clear that the statute was not applied to him. Because if the statute were facially applied to him, he wouldn't have been able to apply for parole, be considered for parole, and have a notice of decision denying him parole. I was going to ask, opposing counsel, saying it doesn't make it so. Saying it can't make it so. It would be like someone suing our clerk's office saying, you didn't accept my complaint, but you produced a docket that shows it was filed on April 16th. Quite so, Your Honor. And we also have the fact there's a lengthy line of authority from this case, from this circuit, rather, that discusses how far outside of a complaint may one go in looking at things and still not transform a motion to dismiss into a motion for summary judgment. In this case, we can certainly look at what is called in prison terms the green sheet, which is the notice of decision from the Board of Probation and Parole, which is a public record that is, incidentally, at page 40 of the joint appendix. And for people who aren't allowed to apply for parole, you're saying there's no green sheet? There would be no green sheet. There would be no application. There would be no decision. What about my question to Mr. Colina about 9718's enumerated offenses? Is this one of the enumerated offenses? One is and one isn't. One of the rapes involved a young woman beneath the age of majority, and the other one involved an adult woman. All right, so that issue doesn't help you? No, not particularly. But the second point of Your Honor's question is that there aren't any and to move a little beyond to flesh out the first point, the question still might be asked whether or not Mr. Newman alleged that things were applied to him, Yes, Your Honor. And I think and I've demonstrated through a variety of cases that are most appropriately discussed in the context of the brief that it was always the case in consideration of parole under the 1941 statute that we still have as amended. It was always entitled to consider, the board was always entitled to consider whether or not the person completed their programming, whether it was a sexual offenders program. Even Mickens-Thomas completed his sexual offenders treatment program. How do you square that with the prior existence of the non-admitted program? Well, that's true, but it was always a factor also in their cases to this point that you could consider whether or not the person admitted responsibility for the offense. If you consider Does that mean the non-admitters were never given parole? No, it doesn't mean the non-admitters were never given parole. You can represent to us that some non-admitters were granted parole? Mr. Mickens-Thomas is a non-admitter. Well, that was After two cases before our That I know for a fact. Again, we're on a 12B6 here. Well, but didn't we find that there were something like 266 cases in a row or something, and that was enough for us to say, wait a minute, we see a pattern developing? My point, and I bow before the court itself, which knows what it means more intimately than any advocate, but I suggest that, and I don't mean to say this just in terms of weasel words that dismiss reasoning. I suggest that if sui generis ever meant anything as a Latin tag, that's what it means in terms of Mickens-Thomas. I don't think you can understand the violation of the ex post facto clause in Mickens-Thomas unless you consider that he was one of 266 men who had been given clemency by the governor and who were then duly paroled. He was one of 27 men who'd been given clemency by Governor Casey, 26 of whom were paroled. So if you get into that context, the fact is he had completed all his programming, whatever programming was at that time, and he was told he was eligible for parole at the staff level of the parole board, told he was eligible by the Department of Corrections, and then they pulled the rug out from under him. I think obviously it was an ex post facto violation, but I don't think, and that's what your court wrestled with in Richardson and has continued to make the point, it's not simply a matter that they changed the policies and practices to some degree between the time an individual was convicted and the time he came up for parole. It has to make a difference. It has to make a big difference. He has to be disadvantaged. No sensible person of goodwill can say that Mickens-Thomas wasn't disadvantaged. But in this point, Mr. Newman does not, I reread the complaint last night to prepare, and you will look in vain for anything that satisfies the second prong of the ex post facto test that I was discussing earlier with Judge Sloviter, and that is the second prong which Judge Hardiman's brought up is you have to show that this person was personally disadvantaged. While obviously it's a great case that Mickens-Thomas had, it would be wrong for me to suggest that every case must be as compelling as Mickens-Thomas. But you have to allege a plausible case to believe that you would have gotten parole but for the changes in the rules. Newman can't do that, and the reason Mr. Newman can't do that is that it was always some consideration. Whether or not the person admitted they were guilty and took responsibility for their offense. It was always a consideration. Pardon me, sir. Can I interrupt you at that point? Yes. I understand you to be making a representation as to what the practice always was. I think you said that before, and you've now come back to it. Are we in a position to consider your representation to that effect? That's an excellent question, of course, Your Honor. And I mean no condescension to say that because I agonized over it last night. The point is I think we can take it from cases that are reported and discuss it. They have addressed this in the habeas corpus context and in the motion for summary judgment context, and those opinions reflect the fact, as historical fact, that that is so. One of those cases, which is cited in the brief, but one of those cases is Wolf v. DiGuglielmo. Well, actually, its earlier forms are cited. It's a 2008 Westlaw 544-645, and I'll provide that under Rule 28J. Okay. Very useful. Thank you. But I mean that's where you come from. And there's also, it can be inferred from a couple of other cases that are there as well, which I will. We will let Judge Pollack continue with it. Did you have more of a question? Your point, then, is simply the statements and recitals in opinions establishes what the practice was as a matter of law. Precisely, Your Honor. Precisely. And does the Pennsylvania Parole Board, to your knowledge, take the position that unless a convicted sexual offender is willing to accept responsibility for the prior sexual offense for which he was convicted, he won't get, he will not be eligible for parole? That's my understanding, Your Honor. And they base that on what? They base that on their analysis of the concept of parole in the sense that one can find expertise, legitimate expertise on both sides of the question. I would think so. That's why I wondered. Yes. You can get experts to say anything, I think, nowadays. But, yes. But do the majority, I mean, like in, we know that in Alcohol Anonymous, for example. Yes. They have to get up and say, I am an alcoholic, and go from there. And is it the position of the parole board that you have to say, I committed a sexual offense, or I have these sexual feelings. At this point. And that, and. At this point. Do you have that in writing somewhere? Is there somewhere that we can look to find that? Not that I'm aware of at this point, but it must be in the regulations. He's alleged that at this point, the sexual offenders treatment program requires the admission of guilt in order for him to complete it and satisfactorily be marked as having completed it. Is that true? I know that's true because there's so many other individuals who have raised this claim under Fifth Amendment grounds, all of which have been rejected, released, who say the very same thing. So I have no reason to doubt it. What you're really telling us is that he's right, whether or not he got the green sheet or whatever it is. In fact, as he says, and as counsel says, he's not being truly considered for parole unless he makes this admission. That's correct. But that was a very important consideration at all times. I don't think. That's a different point. Yes. In other words, what you're saying is non-expert. We always considered it. Yes. Even though we didn't write it down. He's in the same untenable position as someone convicted of homicide who goes before the parole board and says, please give me parole. I did it. I'm glad I did it because that guy was so bad he needed to be killed, but give me parole. That's my honest statement. Or the guy that shows up, let's say he's convicted of first-degree murder, and he shows up and says, you know, I've been convicted of first-degree murder. I was under duress. This person had been beating me for 20 years, and I finally, you know, stopped the beatings, and I killed him. So please give me parole. That person's in a tough spot because the parole board may look at that as a lack of acceptance of responsibility, in light of the crime of conviction, right? Exactly, Your Honor. I mean, occasionally you actually have a compelling history shows us Captain Dreyfus was in that position himself. He had to admit in order to be at some point pardoned for a crime he never committed, he had to admit. And there was a great deal of agony if we look at that situation. I wrestled with this. So the innocent guy's in a worse position than the guilty guy. That's what's so unusual about this. That is. The problem is the system has found the innocent guy to be guilty. Exactly. And that's why I went back and I looked at Herrera v. Collins and the case that came down last summer, the district attorney of Anchorage v. Osborne on the DNA testing. And I think they help us there because what they talk about is Chief Justice Rehnquist talked about, and I can provide the sites for those as well in the Rule 28J letter that I sent. But what they talk about is a very interesting thing, and that is what do you do in that situation? And essentially a claim of actual innocence after all legal process has been exhausted and found to have been perfectly correct according to the rules is a stranger to the law. It is not even clearly determined today that a person who's actually innocent has, for that reason, a federal constitutional right not to be in prison. And when I read that and thought it over, I thought, wow, that's amazing. But that's true. We have never gone to that. The way out of that philosophically, jurisprudentially, is Herrera v. Collins and Chief Justice Roberts now in Osborne both say that's why we have clemency. Clemency is where that person has to go. Well, you'd hope that person would prevail on habeas before they had to get to the difficult argument of clemency. But once you've exhausted habeas, you have nothing left except clemency. There's nothing left. And frankly, they would be willing in a case of a capital prisoner to upset all the rules and make sure no one is executed. But they've yet to absolutely conclude that a claim of actual innocence when you have no legal recourse is in and of itself a claim. So if we look at this man's allegation that he wants to consider he's innocent when he has nothing more than his own word, I mean, all we're saying to him is that's your choice. And you're saying, and therefore, he's not entitled to parole. Exactly. That's what we're not talking about. He still has, what, 20 more years to serve, I forget? Yes, Your Honor, unless he decides to swallow his position. Or lie. Or lie. Or lie. Or lie, and he doesn't want to lie. But aren't we dependent, then, on the validity of the expert, the psychologists, I guess they are, who say this is essential if we're going to do any kind of rehabilitation of the sexual offenders? That's true in any administrative agency situation. The parole board is presumed it's an administrative agency. Well, it has the right to do that. I wasn't suggesting that that was an unreasonable thing to do because we don't know. I mean, it's almost like the drug offenders. We don't know how to reverse these things. The simple answer to your question, Your Honor, would be to say, yes, we do depend on those experts. Does that follow? Does your argument with respect to the unavailability of intending that one is innocent after all legal channels have been pursued, does that have application in this chronology? Are you saying that at the point at which the plaintiff was denied parole for, at least was not eligible for parole because of the non-admission, that at that point all habeas and other reliefs? Yes, Your Honor. I made some effort to demonstrate that. He's been denied habeas in the last several instances for abuse of the writ and second and successive applications. He's at the end of the road. The issue as to whether it's constitutional or not to go forward with the punishment of somebody who is claiming innocence and that there's no recourse is at least an issue which is latent in the Supreme Court's opinion last summer in Reed Troy Davis, which you've probably seen. Yes, Your Honor. So that there, of course, the last, last resort was to apply for habeas directly to the Supreme Court. Yes, Your Honor. I suppose there may be other, I haven't represented Mr. Newman, so I haven't tried to see what other legal recourse, the ordinary, not superficial, but the ordinary analysis would lead you to believe that he has no recourse left at the law. Thank you very much for your candor. Thank you, Your Honor. And your argument. Thank you very much. It's been a privilege. Mr. Kalina, we'll hear from you. Thank you, Your Honor. I have a few points on rebuttal. It seems to me that what Mr. Marichle, am I pronouncing it right? Perfectly, Your Honor. Oh, what Mr. Marichle is telling us is, look, whatever the rules say, whatever the prior cases say, Mr. Newman is not entitled to parole because he won't take the, he has chosen not to take the first step for a convicted sexual offender of saying, I did it. And why shouldn't we face that, and you give us good reasons why, well, you know, ex post facto First Amendment. But that's what it comes down to, doesn't it? It does come down to the problem of that the board is requiring for him to even complete this SOP program to make this admission of guilt. Well, but as Judge Hardiman says, he went through the process. Maybe the process was weighted against him because it requires that he admit to something he won't admit to, but he's been convicted. He's gone up and down and up and down state and federal systems. Well, I think I want to make a distinction there between what the parole board said, which was you have to complete this SOP. And he's alleged that there used to be a non-admitters program. It's not there anymore. Yeah, but they didn't get out except for Mick and Thomas and just because Judge Rosen, I was on that panel, and Judge Rosen, you know, went through the record. Nobody was going to, he had been Secretary of the Commonwealth. Nobody was going to tell him he was wrong. I'm not sure any other judge on this court could have done that. Go ahead. His argument is that he is not being fairly considered, and he has a right to fair consideration for parole under Pennsylvania law, and that he's not being fairly considered. So what should we do? According to you, what would be the relief that you're asking us to do? The relief that we're asking for is a reversal and remand to continue with discovery and answer and let's get the facts out here. What facts are not there that you think discovery would provide? Well, Your Honor, I think the, again, there were the changes in the non-admitter-admitter program, that decision-making, the reasonable basis for that. Suppose you're right. Let's assume that it goes back and you're right and there was a non-admitter program, but one that nobody got out of. Let's take all the facts like you allege. What happens then? Do you want the parole board to go through the motions? No, I don't want the parole. He doesn't want the parole board to go through the motions. He's seeking equitable relief to be fairly considered on all the factors, as opposed to cutting him off from parole by saying he can't take this SOP and he can't do it because it's requiring him to, as you said before, either lie or swallow his pride or however you want to put it. But you've candidly and properly, in my view, admitted that as long as he asserts his innocence, he's not getting parole. Well, I can't say to what the parole board will do in a given circumstance, given all the factors, and they haven't considered that here. It's almost as if you're seeking the relief of asking us to issue a mandatory injunction that they reinstate the non-admitters program. Because as long as they don't have a non-admitters program and as long as he does not accept responsibility for the crime of conviction, he's not getting parole. Well, they could also consider all the factors and not simply stop and say, no SOP, no parole, and end the analysis right there. He's looking for a fair consideration. But even under the non-admitters program, they didn't get out. But you said they should consider everything else, but I thought you had articulated in your brief and perhaps today as well that admission of guilt and acceptance of responsibility was a sine qua non of parole, irrespective of how positive the other factors might weigh in your client's favor. I don't think we ever said it was a sine qua non. We always said it was one of the factors that the parole board would consider, that it's always been a responsibility for taking responsibility for underlying crime. It was always something that the parole board could consider. And if I'm wrong, you can certainly correct me, but I don't think we state that that was the sine qua non, without which you cannot get parole. Well, Mr. Richley says that. He does say that. He concedes that. Maybe I heard that from him. He does concede that. Okay. Thank you very much. Thank you, Your Honor. It's been a pleasure. Thank you again for undertaking this and coming to Philadelphia. Enjoy it. I know Pittsburgh's a great city, but since Philadelphia – It's nice of you to be back. I went to school here, so it's nice to come back. Oh, did you? Great. Okay. We'll hear the next case for this morning,